UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **TERRY WAYNE BESHERE,** | § | |
| **TDCJ No. 1693789,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **V.** | § | **CIVIL NO. SA-15-CA-1119-RP** |
| | § | |
| **J. MANUEL PERALTA, Senior Warden,** | § | |
| **FNU GARCIA, Assistant Warden,** | § | |
| **FNU RAMIREZ, Assistant Warden,** | § | |
| **FNU CIRON, Major,** | § | |
| **SYLVIA CORTEZ,[1] Chief of Classification,** | § | |
| **FNU GAINES, Administrative Director, and** | § | |
| **FNU CHAPPA, Assistant Director,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

The matters before the Court are (1) Defendants Peralta and Cortez's Motion to Dismiss, filed April 21, 2016 (ECF no. 18), (2) Plaintiff's conclusory claims against the remaining defendants set forth in Plaintiff's Amended Complaint, filed March 7, 2016 (ECF no. 13), and (3) the status of this case. For the reasons set forth below, Defendants Peralta and Cortez's Motion to Dismiss will be granted and Plaintiff's claims against the remaining defendants be dismissed as frivolous.

## I. Background and Procedural History

Plaintiff Terry Wayne Beshere, currently at inmate at the Texas Department of Criminal Justice's ("TDCJ's") John B. Connally Unit in Kenedy, Texas, filed this action pursuant to 42 U.S.C. § 1983 on December 9, 2015 (ECF no. 1), naming as defendants the Senior Warden of

---

[1] Plaintiff identified this defendant as Ms. Cortes. Defendants indicate Ms. Cortes is actually Sylvia Cortez. The correct spelling of the defendant's name shall be substituted in the record.

the Connally Unit and the Chief of Classification at the same facility, alleging (1) the defendants had failed to furnish Plaintiff with adequate food because inmates at the Connally Unit had been fed only sack lunches for substantial periods of time and (2) the defendants had denied Plaintiff a job assignment in retaliation for Plaintiff filing grievances against Connally Unit personnel. Defendants Peralta and Cortez filed their original Motion to Dismiss on January 28, 2016 (ECF no. 8), arguing in pertinent part that (1) Plaintiff failed to allege specific facts showing any personal involvement by Warden Peralta in the planning, menus, or the provision of food to Connally Unit inmates, (2) Plaintiff's preference for hot meals over sack lunches did not rise to the level of a constitutional issue, i.e., did not amount to the denial of a minimal civilized measure of life's necessities, and (3) Plaintiff possessed no constitutionally protected right to a job assignment during his incarceration.

In an apparent effort to respond to the defendants' Motion to Dismiss, on February 3, 2016 (ECF no. 9), Plaintiff filed a pleading which this Court liberally construed as a supplemental complaint.  On February 10, 2016 (ECF no. 10), Plaintiff filed a response to Defendants' original Motion to Dismiss in which he argued (1) Warden Peralta was ultimately responsible as a supervisor for the alleged actions of his subordinates in failing to furnish Plaintiff and other Connally Unit inmates with hot meals, (2) Defendant Cortez retaliated in October 2014, against Plaintiff for his filing of a grievance against a friend of that defendant by taking away a janitorial position Plaintiff held at the Connally Unit prior to that time, transferring Plaintiff to another building at the Connally Unit, and thereafter refusing to give Plaintiff a new job assignment, and (3) the denial of a new job assignment to Plaintiff amounted to a denial of rehabilitation to which Plaintiff is entitled under "the Rehabilitation Act."

On February 24, 2015 (ECF no. 11), Plaintiff requested permission to amend his complaint.  On February 25, 2015, this Court granted that request.  On March 7, 2016 (ECF no. 13), Plaintiff filed his amended complaint, adding five additional TDCJ or Connally Unit officials as defendants and alleging those defendants had participated in unspecified ways in the alleged denial of adequate food and a new job assignment to Plaintiff.

On April 21, 2016 (ECF no. 18), Defendants Peralta and Cortez filed their second motion to dismiss (1) once again arguing Plaintiff failed to allege any facts showing they had been personally involved in any denial to Plaintiff of "the minimal civilized measure of life's necessities," (2) asserting the defense of qualified immunity, and (3) arguing Plaintiff failed to allege any facts showing either of them had displayed deliberate indifference to Plaintiff's health or safety.  To date, Plaintiff has failed to respond in any manner to their latest motion to dismiss.

## II. <u>Section 1983 Generally</u>

Title 42 U.S.C. § 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of federal statutory and constitutional rights.  *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013), *cert. denied,* 134 S. Ct. 1789 (2014); *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008); *Hernandez ex rel. Hernandez v. Texas Department of Protective and Regulatory Services*, 380 F.3d 872, 879-80 (5th Cir. 2004); *Flores v. City of Palacios*, 381 F.3d 391, 404 (5th Cir. 2004); *LaFleur v. Texas Department of Health*, 126 F.3d 758, 759 (5th Cir. 1997); *Jackson v. City of Atlanta, Tex.*, 73 F.3d 60, 63 (5th Cir. 1996), *cert. denied*, 519 U.S. 818 (1996).

There are two essential elements to a § 1983 action: (1) the conduct in question must be committed by a person acting under color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of the United States.  *Whitley v.*

*Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014); *Romano v. Greenstein*, 721 F.3d 373, 377 (5th Cir. 2013); *Wyatt v. Fletcher*, 718 F.3d 496, 517 (5th Cir. 2013); *Doe ex rel. Magee v. Covington County School District*, 675 F.3d 849, 854 (5th Cir. 2012); *D.A. ex rel. Latasha A. v. Houston Independent School District*, 629 F.3d 450, 456 (5th Cir. 2010); *Doe v. Dallas I.S.D.*, 153 F.3d 211, 215 (5th Cir. 1998); *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997), *cert. denied*, 525 U.S. 822 (1998); *Leffall v. Dallas I.S.D.*, 28 F.3d 521, 525 (5th Cir. 1994); *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development*, 980 F.2d 1043, 1050 (5th Cir. 1993), *cert. denied*, 510 U.S. 820 (1993); *Martin v. Thomas*, 973 F.2d 449, 452-53 (5th Cir. 1992); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984).  *See also Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999) (holding a constitutional claim of discrimination requires proof of purposeful discrimination; disparate impact is insufficient; and the absence of discriminatory purpose precludes a constitutional violation).

In order to state a cause of action under § 1983, a plaintiff must allege facts establishing that an otherwise private defendant acted "under color" of state law.  *Rundus v. City of Dallas, Texas*, 634 F.3d 309, 312 (5th Cir.) (to show there is state action by an otherwise private entity, the plaintiff must show either (1) the private entity's action represents an official-city policy or custom or (2) the defendant's action in enacting and enforcing the restriction is "fairly attributable" to the city), *cert. denied*, 132 S. Ct. 107 (2011); *Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) (holding no § 1983 liability could exist with regard to private defendants absent allegations the non-governmental defendants acted in concert with a governmental entity to deprive the plaintiff of his rights); *Brummett v. Camble*, 946 F.2d 1178, 1184 (5th Cir. 1991), *cert. denied*, 504 U.S. 965 (1992); *Auster Oil & Gas, Inc. v. Stream*, 764

F.2d 381, 386-88 (5th Cir. 1985), *cert. denied*, 488 U.S. 848 (1988).   Stated somewhat differently, a claim for relief under 42 U.S.C. § 1983 must contain two elements: (1) that plaintiff has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendant acted under color of state law.  *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 2995 (2011); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (a person acts under color of state law if he misuses "power" possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law); *Randolph v. Cervantes*, 130 F.3d at 730; *Doe v. Rains County Independent School District*, 66 F.3d 1402, 1406 (5th Cir. 1995); *Leffall v. Dallas I.S.D.*, 28 F.3d at 525; *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development*, 980 F.2d at 1050; *Martin v. Thomas*, 973 F.2d at 552-53; *Fyfe v. Curlee*, 902 F.2d 401, 403 (5th Cir. 1990), *cert. denied*, 498 U.S. 940 (1990); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).

> Whether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the alleged violation.   Rather, the court must consider: (1) whether the officer "misuse[d] or abuse[d] his official power," and (2) if "there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties."   If an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law.

*Bustos v. Martini Club Inc.*, 599 F.3d at 464-65 (*Footnotes omitted*).

Thus, not all actions of a state official are necessarily taken under color of state law; where the actor's motivation was personal and the actor did not invoke or use any official authority, there is an absence of a showing of action "under color of state law."  *Bryant v. Military Department of Mississippi*, 597 F.3d 678, 686-87 (5th Cir.), cert. denied, 562 U.S. 893 (2010).

Insofar as Plaintiff complains that the defendants failed to comply with a variety of state statutes and code provisions, including the poorly identified "Rehabilitation Act," that claim is *non sequitur*.  Absent some showing that the defendants violated Plaintiff's *federal* constitutional rights, complaints about the violation of state statutes or state agency regulations are insufficient as a matter of law to support a claim for relief under § 1983.  *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 352 (5th Cir. 2012) ("[A]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution."); *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998) (holding alleged violations of TDCJ procedural rules regarding notice and the right to call witnesses and present documentary evidence at a disciplinary hearing did not present an arguable basis to support a due process claim); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met); *Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) (holding a mere failure to accord procedural protection called for by state law or regulation does not of itself amount to a denial of due process), *cert. denied*, 516 U.S. 860 (1995); *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (holding a state's failure to follow its own procedural regulations does not constitute a violation of due process if constitutional minima are met); *Murray v. Mississippi Department of Corrections,* 911 F.2d 1167, 1168 (5th Cir. 1990) (holding alleged violations of a state statute did not give rise to federal constitutional claims), *cert. denied*, 498 U.S. 1050 (1991); *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989) ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.'"); *Brown v. Texas A&M University*, 804 F.2d 327,

335 (5th Cir. 1986) (holding a state agency's violations of its own internal regulations did not establish a Due Process violation or otherwise give rise to a constitutional claim).

Finally, mere negligence by a state official or employee does not give rise to Section 1983 liability. *Daniels v. Williams*, 474 U.S. 327, 332-35 (1986). A showing of merely negligent conduct by an official is insufficient to overcome the defense of qualified immunity. *Whitley v. Hanna*, 726 F.3d at 643 ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity."); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 410 (5th Cir. 2007 (negligence will not support the denial of qualified immunity); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (holding the same). Negligent failure to supervise or train does not satisfy the "deliberate indifference" standard and will likewise not support a Section 1983 claim against a municipal entity. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989) (holding only a showing of deliberate indifference by municipal policy makers will support § 1983 liability based on a failure-to-train claim); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 170 (5th Cir. 2010) ("'Unintentionally negligent oversight' does not satisfy the deliberate indifference standard."), *cert. denied*, 131 S. Ct. 3059 (2011); *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (holding the same), *cert. denied*, 131 S. Ct. 2094 (2011).

### III. <u>Qualified Immunity</u>

As public officials or employees performing discretionary tasks, all of the defendants identified in Plaintiff's Amended Complaint are entitled to the benefits of the defense of qualified immunity. Even when a state official or other person acting under color of state law

engages in constitutionally impermissible conduct, the defendant may nevertheless be shielded from liability for civil damages if the defendant's actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd,* 563 U.S. 731, 743 (2011); *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013). The defense of qualified immunity first recognized in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), is neither a complete barrier to recovery nor a true affirmative defense. Rather, its invocation serves to shift the burdens of pleading and proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties. A party seeking damages from an official asserting *Harlow* qualified immunity bears the burden of overcoming that defense. *McCreary v. Richardson*, 738 F.3d at 655; *Wyatt v. Fletcher*, 718 F.3d 496, 802 (5t5h Cir. 2013); *Crostley v. Lamar County, Texas*, 717 F.3d 410, 422 (5th Cir. 2013). Once a government official or employee has asserted qualified immunity and established that the allegedly wrongful acts were undertaken within the scope of his discretionary authority, the burden shifts to the party seeking damages to show that qualified immunity does *not* bar recovery. The Fifth Circuit has authorized the dismissal as frivolous of civil rights claims which fail to establish a violation of the plaintiff's "clearly established" federal rights. *See Moore v. Carwell*, 168 F.3d 234, 236-37 (5th Cir. 1999) (affirming summary dismissal of complaint against state prison officials as frivolous on qualified immunity grounds). An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity. *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998); *see also Goodman v. Harris*

*County*, 571 F.3d 388, 395 (5th Cir. 2009) (qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known), *cert. denied sub nom. Ashabranner v. Goodman*, 558 U.S. 1148 (2010); *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 418 (5th Cir. 2008) (holding the same); *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (holding the same).  An official acts within the scope of his authority if he discharges the duties generally assigned to him. *Tamez v. City of San Marcos, Texas*, 118 F.3d at 1091-92.  For executive officers in general, qualified immunity is the norm.  *Malley v. Briggs*, 475 U.S. at 340; *Harlow v. Fitzgerald*, 457 U.S. at 807.

> [Q]ualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S., at 206, 121 S. Ct. 2151.  For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. *Forsyth*, 472 U.S. 511,] 535, n. 12, 105 S. Ct. 2806, 86 L. Ed. 2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

> Officers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C. § 242.  Section 242 makes it a crime for a state official to act "willfully" and under color of law to deprive a person of rights protected by the Constitution.  In *United States v. Lanier,* 520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997), we held that the defendant was entitled to "fair warning" that his conduct deprived his victim of a constitutional right, and that the standard for determining the adequacy of that warning was the same as the standard for determining whether a constitutional right was "clearly established" in civil litigation under § 1983.

*Hope v. Pelzer*, 536 U.S. at 739-40.

Although the exact statement of *Harlow* qualified immunity may vary from case-to-case, as explained above, the Supreme Court and the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading *Harlow* immunity to be liable, the defendant official's conduct must have violated clearly established statutory or constitutional rights of which a reasonable person would have known.  *Ashcroft v. Al-Kidd*, 563 U.S. at 741; *Anderson v. Creighton*, 483 U.S. at 646 n.6; *Harlow v. Fitzgerald*, 457 U.S. at 818; *Wyatt v. Fletcher*, 718 F.3d at 502; *Easter v. Powell*, 467 F.3d at 462.  If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.  *See Lewis v. University of Texas Medical Branch*, 665 F.3d 625, 631 (5th Cir. 2011) (fact that reasonable minds could disagree on the propriety of the plaintiff's termination is insufficient to defeat a public officer's qualified immunity defense); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 407-08 (5th Cir. 2007) (if reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.").  Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  In a § 1983 lawsuit, the relevant inquiry is whether the legal right which the plaintiff asserts was violated was clearly established under federal law.  *Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997).  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful act or omission generally turns on the "objective legal reasonableness" of the act or omission assessed in the light of the legal rules that were "clearly established" at the time

10

it was taken. *Anderson v. Creighton*, 483 U.S. at 639.  For the legal rules to be considered "clearly established," the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right"; that is, "in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. at 640.  While there need not have been a specific ruling squarely on point on the issue in question, the law must have been sufficiently clear to put the official on notice of the impropriety of his actions. *Kinney v. Weaver*, 367 F.3d 337, 372 (5th Cir.), *cert. denied*, 543 U.S. 872 (2004); *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir.), *cert. denied*, 525 U.S. 872 (1998).  The Fifth Circuit has directed courts to initially examine Supreme Court and Fifth Circuit precedent, i.e., "controlling authority," in the course of determining whether a legal principle is "clearly established"; the law of other Circuits may be considered when "a consensus of cases of persuasive authority [is] such that a reasonable officer could not have believed that his actions were lawful." *McClendon v. City of Columbia*, 305 F.3d 314, 328 (5th Cir.) (*en banc*), *cert. denied*, 537 U.S. 1232 (2002).

The second step in the qualified immunity analysis is the determination of the objective reasonableness of the defendant's act or omission.  Objective reasonableness is assessed in light of the legal rules clearly established at the time of the incident; an officer's conduct is not objectively reasonable when all reasonable officials would have realized the particular challenged conduct violated the constitutional provisions sued on.  *See Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (recognizing qualified immunity in excessive force case required not only examination of clearly established Fourth Amendment standards but also whether a right to remain free the degree of force used in a given situation was clear to a

reasonable officer at the scene).   The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); *Malley v. Briggs*, 475 U.S. at 343.

### IV. <u>Rule 12(b)(6) Motions to Dismiss</u>

The pleading standard set forth in Rule 8(a)(2), FED.R.CIV.P., (which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief") does not require detailed factual allegations but it does demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal,* 556 U.S. at 678; *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 360 (5th Cir. 2014).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. at 678; *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555; *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d at 360.  A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do.  *Ashcroft v. Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it renders "naked assertions" devoid

of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557.

### V. Standard for Review Under Sections 1915(e) (2) (B) & 1915A

When Congress enacted the Prison Litigation Reform Act of 1996 ["PLRA"], it specifically amended 28 U.S.C. § 1915(e) (2) (B) (i) and added new § 1915A to provide that a complaint filed by a prisoner could be dismissed as frivolous regardless of whether any filing fee or portion thereof had been paid. *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998), *cert. denied*, 527 U.S. 1041 (1999). Therefore, Plaintiff's claims herein are subject to review under § 1915(e) and dismissal as frivolous regardless of whether he paid any portion of the filing fee in this cause. *See Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (holding the federal district courts are required to dismiss any action brought by a prisoner that is frivolous, malicious, fails to state a cause of action, or seeks monetary damages from a defendant who is immune from such relief); 42 U.S.C. §1997e(c).

Title 28 U.S.C. § 1915(e) accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complainant's factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). The PLRA moved the relevant statutory provision addressing dismissal for frivolousness from former subsection (d) of § 1915 to new subsection (e) (2) (B) and expanded the scope of that statute to expressly authorize dismissals of lawsuits as frivolous regardless of whether a filing fee or any portion

thereof had been paid. *Jackson v. Stinnett*, 102 F.3d 132, 136-37 (5th Cir. 1996); 28 U.S.C. § 1915(e)(2)(B)(i).

In an action filed In Forma Pauperis, a court may raise sua sponte the issue of whether an action is malicious or frivolous under § 1915(e). *Neitzke v. Williams*, 490 U.S. at 327; *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999), (holding it appropriate for a district court to *sua sponte* determine whether a claim was barred by limitations); *Schultea v. Wood*, 47 F.3d at 1434. Dismissal of a claim as frivolous under § 1915(e) is permissible where the claim lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. at 325; *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013); *Harris v. Hegmann*, 198 F.3d at 156; *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998); *Gonzales v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998); *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Martin v. Scott*, 156 F.3d at 580 (holding frivolous complaints by a prisoner in administrative segregation regarding restrictions on his recreation and visitation time, possession of personal property, ability to purchase items from the commissary, denial of desert, required jump suit, handcuffs during all transfers, and food that included Vita-Pro); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995); *Boyd v. Biggers*, 31 F.3d 279, 281 (5th Cir. 1994); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *Booker v. Koonce*, 2 F.3d 114, 116 (5th Cir. 1993).

A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. *Rogers v. Boatright*, 709 F.3d at 407; *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009); *Harris v. Hegmann*, 198 F.3d at 156; *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the

facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. at 32-33; *Rogers v. Boatright*, 709 F.3d at 407; *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (holding dismissal as frivolous appropriate after the plaintiff is given an opportunity to amend or allege additional facts through answers to a post-complaint questionnaire), *cert. denied*, 560 U.S. 944 (2010); *Samford v. Dretke*, 562 F.3d at 678; *Harris v. Hegmann*, 198 F.3d at 156 (holding a complaint is factually frivolous when the facts alleged are fantastic or delusional or the legal theory upon which a complaint relies is indisputably meritless); *Davis v. Scott*, 157 F.3d at 1005, (holding the Magistrate had no duty to ask specific questions during a *Spears* hearing and that the plaintiff remains master of his complaint and is responsible for articulating the facts that give rise to a cognizable claim); *Talib v. Gilley*, 138 F.3d at 213.

Typical examples of claims which can be dismissed pursuant to Section 1915(e) include (1) claims against which it is clear that the defendants are immune from suit (*Neitzke v. Williams*, 490 U.S. at 327; *Krueger v. Reimer*, 66 F.3d at 76-77 (upholding the dismissal as frivolous of civil rights lawsuits on the grounds that the defendants were entitled to absolute judicial and prosecutorial immunity; *Boyd v. Biggers,* 31 F.3d at 284-85) (holding the same)); (2) claims of infringement of a legal interest that clearly does not exist (*Neitzke v. Williams*, 490 U.S. at 327; *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) (upholding dismissal as frivolous of complaints about prison grooming regulations); *Davis v. Scott*, 157 F.3d at 1005 (holding, absent allegations the plaintiff suffered a physical injury, plaintiff's complaints that he was assigned to a filthy cell for three days did not raise even an arguable basis for relief under the Eighth Amendment); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (holding a state prisoner possessed no constitutionally-protected right to grow a beard or his hair long); *Biliski v. Harborth*, 55 F.3d at 162 (holding that a state prisoner's equal protection claims arising out of his being housed at a

county jail did not invoke any federal constitutional rights); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (affirming the dismissal as frivolous of a claim by a convicted prisoner that he had been denied the opportunity to attend religious and educational classes with the general inmate population based upon his diagnosis as a mental patient)); and (3) claims which are barred by limitations (*Harris v. Hegmann*, 198 F.3d at 156; *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 259 (5th Cir. 1993); *Henson-El v. Rogers*, 923 F.2d 51, 53 (5th Cir.), *cert. denied*, 501 U.S. 1235 (1991).

In reviewing a complaint under § 1915(e), a court is not bound to accept without question the truth of the plaintiff's allegations. *Denton v. Hernandez*, 504 U.S. at 32; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them. *Denton v. Hernandez*, 504 U.S. at 32-33; *Harris v. Hegmann*, 198 F.3d at 156; *Gartrell v. Gaylor*, 981 F.2d 254, 259 (5th Cir. 1993). A district court may dismiss an In Forma Pauperis proceeding as frivolous under 28 U.S.C. § 1915(e) whenever it appears that the claim has no arguable basis in law or fact. *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006) (upholding dismissal as frivolous of prisoner's complaint about the confiscation of a medical pass that was re-issued the same date it was confiscated); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (upholding dismissal as frivolous of prisoner's complaints (1) about alleged failure of prison officials to investigate prisoner's grievances against prison mail room and security staff, (2) of retaliation based upon plaintiff's failure to exhaust administrative remedies, and (3) about allegedly negligent loss of property); *Velasquez v. Woos*, 329 F.3d 420, 421 (5th Cir. 2003) (upholding dismissal as

frivolous of prisoner's complaint about collection of DNA sample from plaintiff); *McCormick v. Stalder*, 105 F.3d at 1061 (dismissing as frivolous a prisoner's complaint that he was forced to undergo medical treatment for Tuberculosis while incarcerated); *Thompson v. Patteson*, 985 F.2d 202, 205 (5th Cir. 1993); *Gartrell v. Gaylor*, 981 F.2d at 259; *Henthorn v. Swinson*, 955 F.2d 351, 352 (5th Cir.), *cert. denied*, 504 U.S. 988 (1992).

In an action proceeding under § 1915(e), a federal court may consider *sua sponte* affirmative defenses that are apparent from the record even where they have not been addressed or raised in the pleadings on file. *Harris v. Hegmann*, 198 F.3d at 156 (recognizing the propriety of a district court's raising the defense of limitations *sua sponte*); *Schultea v. Wood*, 47 F.3d at 1434 (recognizing the authority of the district court to dismiss an action based on the doctrine of qualified immunity); *Gartrell v. Gaylor*, 981 F.2d at 259; *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990) (limitations); *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989) (limitations). Significantly, the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of an answer. *Brewster v. Dretke*, 587 F.3d at 767 ("The district court may dismiss an *in forma pauperis* proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met."); *Harris v. Hegmann*, 198 F.3d at 156; *Schultea v. Wood*, 47 F.3d at 1434; *Gartrell v. Gaylor*, 981 F.2d at 259; *Ali v. Higgs*, 892 F.2d at 440; *Burrell v. Newsome*, 883 F.2d at 418.

A case is not frivolous simply because it fails to state a claim. *Neitzke v. Williams*, 490 U.S. at 331; *Booker v. Koonce*, 2 F.3d at 115; *Gartrell v. Gaylor*, 981 F.2d at 259; *Ancar v. Sara Plasma, Inc.*, 964 F.2d at 468. However, if the claim has no arguable basis in law or fact, the complaint can be dismissed under § 1915(e). *Gartrell v. Gaylor*, 981 F.2d at 259; *Parker v. Carpenter*, 978 F.2d 190, 191 n.1 (5th Cir. 1992); *Mayfield v. Collins*, 918 F.2d 560, 561 (5th

17

Cir. 1990).  "A complaint is legally frivolous if it is premised on an 'undisputably meritless legal theory.'" *Boyd v. Biggers*, 31 F.3d at 281-82 (*quoting Neitzke v. Williams*, 490 U.S. at 327).  An In Forma Pauperis complaint that recites bare legal conclusions, with no suggestion of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for dismissal under § 1915(e).  *Ancar v. Sara Plasma, Inc.*, 964 F.2d at 468 (complaints that are clearly baseless include those which describe fanciful, fantastic, or delusional scenarios); *Gartrell v. Gaylor*, 981 F.2d at 259; *Wesson v. Oglesby*, 910 F.2d at 281.  Furthermore, when it is clear from the face of the complaint that the claims asserted are subject to an obvious meritorious defense, such as a peremptory time bar, dismissal with prejudice is appropriate. *Graves v. Hampton*, 1 F.3d 315, 319-20 (5th Cir. 1993).

## VI. <u>Claims Against Supervisory Officials</u>

Plaintiff has asserted claims against Warden Peralta and a number of other TDCJ officials (including Defendants Garcia, Ramirez, Ciron, Gaines, and Chappa) based solely upon their supervisory roles over Connally Unit officials whom Plaintiff alleges have denied his federal constitutional rights.  Vicarious liability does not apply to § 1983 claims, however.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (municipality could not be held liable under section 1983 absent proof its failure to adequately train its employees rose to the level of deliberate indifference to the rights of its citizens); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior); Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978) (a local government may not be sued under § 1983 for injury inflicted solely by its non-policymaking employees or agents).  Under § 1983, supervisory

officials are not liable for the actions of subordinates on any theory of vicarious liability; the doctrine of *respondeat superior* does not apply to such actions.  *See Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (under § 1983, a government official may be held liable solely for his own conduct).  Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983.  *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 169 (5th Cir. 2010) ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor."), *cert. denied*, 564 U.S. 1038 (2011).

Generally, a supervisor may be held liable only if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in the plaintiff's injuries. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).  A supervisor may be held personally liable for inadequate supervision or a failure to train subordinates only where the failure to train or supervise amounts to deliberate indifference and is a proximate cause of a constitutional violation.  *See Porter v. Epps*, 659 F.3d at 446 ("A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"); *Brown v. Callahan*, 623 F.3d 249, 254 n.1 (5th Cir. 2010) (supervisor may be held liable under Section

1983 for failure to train or supervise subordinates if (1) the supervisor failed to train or supervise, (2) a causal link exists between the failure and violation of plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference), *cert. denied*, 563 U.S. 1021 (2011). Merely negligent or incompetent supervision cannot form a basis for liability under Section 1983; the supervisor's actions or inactions must rise to the level of "deliberate indifference." *Id.*

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* — U.S. —, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (internal quotation marks omitted, alteration in original) (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). To establish that a state actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program causes...employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." *Id.* (citing *Bryan Cnty.,* 520 U.S. at 407, 117 S. Ct. 1382). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

*Porter v. Epps*, 659 F.3d at 446-47.

Insofar as Plaintiff alleges Defendants Peralta, Garcia, Ramirez, Gaines, Ciron, and Chappa failed to properly supervise their subordinates, Plaintiff has failed to state a non-frivolous cause of action against any of those defendants under § 1983. Plaintiff has failed to allege any specific facts showing that Defendants Gaines or Chappa had any personal knowledge of, or personal involvement in, any of the alleged deprivations of Plaintiff's federal constitutional rights mentioned in Plaintiff's pleadings in this lawsuit. For the reasons discussed above, Plaintiff may not rely upon the supervisory roles TDCJ officials exercise over the Connally Unit's line personnel to hold the supervisors liable under § 1983.

## VII. **The Eighth Amendment Standard**

The Eighth Amendment's prohibition on cruel and unusual punishment imposes duties on prison officials; they must provide humane conditions of confinement, i.e., prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment only when two requirements are met: first, the deprivation alleged must be objectively sufficiently serious as to result in the denial of "the minimal civilized measure of life's necessities"; and second, the prison official must have a sufficiently culpable state of mind, i.e., the prison official must have displayed deliberate indifference to inmate health or safety. *Farmer v. Brennan*, 511 U.S. at 834; *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001); *Palmer v. Johnson*, 193 F.3d 346, 352, (5th Cir. 1999). A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. at 837; *Palmer v. Johnson*, 193 F.3d at 352.

## VIII. **The Alleged Denial of Adequate Food**

Even when liberally construed, as required for pro se pleadings, Plaintiff's allegations in this lawsuit fail to allege specific facts showing any of the named defendants displayed deliberate indifference to Plaintiff's health or safety. The denial of hot meals to Connally Unit inmates for substantial periods of time did not deprive Plaintiff of "the minimal civilized measure of life's necessities." Plaintiff admits he has received hot meals whenever TDCJ officials visit the

Connally Unit.  He complains merely that this is not always the case.  Plaintiff alleges no specific facts sufficient to overcome the defense of qualified immunity establishing that any of the named defendants has displayed subjective deliberate indifference to Plaintiff's health or safety.  Even assuming Plaintiff has received sack lunches the overwhelming majority of the time he has resided at the Connally Unit, there is no clearly established federal law guaranteeing prison inmates hot meals.  The requirement that prison officials furnish inmates with adequate food focuses on the nutritional value furnished to inmates, not the method of presentation.  *See Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (affirming the dismissal as frivolous of a prisoner's complaint that he missed fifty meals over a five month period and lost about fifteen pounds and holding whether the deprivation of food constitutes cruel and unusual punishment turns on the amount and duration of the alleged deprivation).  Plaintiff alleges no specific facts showing the quantity or nutritional; value of the meals he has been served during his period of incarceration at the Connally Unit has been insufficient to help Plaintiff avoid either hunger pains, significant weight loss, or any diet-related maladies or illnesses.

Plaintiff does not allege he has been deprived of adequate food, only food served in a manner he prefers.  His complaints about receiving sack lunches the vast majority of the time he has been incarcerated at the Connally Unit are insufficient, *absent any allegation he has suffered any actual physical harm*, to overcome the defense of qualified immunity or furnish a basis for an award of monetary damages under § 1983.  *See Herman v. Holiday*, 238 F.3d at 665-66 (holding that, absent a showing of actual physical injury, monetary damage claims for emotional or mental injury (like Plaintiff's assertion he has been "stressed out" by the refusal of Connally Unit officials to assign him a job and furnish him hot meals) are barred by 42 U.S.C. § 1997e(e)).

It is settled in this Circuit that the provision of at least two nutritionally adequate meals daily satisfies the Eighth Amendment's constitutional requirement of adequate food for prisoners.  *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (holding whether the deprivation of food falls below the constitutional minimum depends on the amount and duration of the deprivation); *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986) (setting aside a lower court's requirement of a third nutritionally adequate meal daily).  Plaintiff alleges no facts showing this standard was violated by any of the defendants.

Plaintiff alleges no specific facts showing he has suffered from any insufficient-diet-related medical or physical condition during his incarceration at the Connally Unit.  *See Berry v. Brady*, 192 F.3d at 508 (rejecting Eighth Amendment inadequate food claim where the plaintiff alleged no specific physical harm other than hunger pains: "Neither has Berry claimed that he lost weight or suffered other adverse physical effects or was denied a nutritionally and calorically adequate diet, nor has he alleged having his health put at risk.").  Plaintiff has alleged even less specific facts showing he has suffered harm from the provision of sack lunches at the Connally Unit than did the plaintiff in *Berry*.  Plaintiff does not allege that he has missed any meals or suffered any identified physical harm associated with his diet, only that he prefers hot meals with more vegetables to the sack meals he has been provided.  Other than complaining that some of his sack meals have not included any vegetables, Plaintiff does not identify any nutritional defect in his diet.  Under such circumstances, Plaintiff has alleged no specific facts showing any of the defendants displayed subjective deliberate indifference which resulted in a violation of Plaintiff's Eighth Amendment right to receive adequate food.  Plaintiff's complaints about not receiving hot meals on a daily basis are insufficient to overcome the defense of qualified immunity.

## IX. <u>Job Assignment Claim</u>

Insofar as Plaintiff alleges Defendants Cortez and Ciron violated Plaintiff's federal constitutional rights by taking away Plaintiff's janitorial job assignment following what Plaintiff admits was a violent altercation between Plaintiff and another inmate in October, 2014 (and thereafter refusing to issue Plaintiff a new job assignment), Plaintiff's complaint fails to assert a non-frivolous claim sufficient to overcome the defense of qualified immunity. There is no clearly established federal constitutional right possessed by convicted prisoners to a job assignment. *See Bibbs v. Early*, 541 F.3d 267, 271 (5th Cir. 2008) ("where an inmate alleged that a defendant retaliated against him by removing him 'from his job as inmate counsel' and later transferring him to another prison, this was inadequate to support a retaliation claim, as 'a prisoner has no constitutionally protected interest in a particular facility or a specific work assignment.'"); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996) (holding there is no constitutionally protected interest in a particular facility or a specific work assignment); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995) (prisoners have no constitutionally protected liberty or property interest *per se* in their prison job assignments); *Jackson v. Cain*, 864 F.2d 1235, 1247-48 (5th Cir. 1989) (a prisoner has no constitutional right to a specific work assignment). "Prison officials have broad administrative and discretionary authority over the institutions they manage and lawfully incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Jackson v. Cain*, 864 F.2d at 1247. A convicted prisoner's loss of a job assignment or loss of the ability to acquire new job assignments following a prison disciplinary proceeding (even one which was allegedly resolved in that inmate's favor as Plaintiff asserts) does not implicate any

constitutionally protected liberty interest.  *See Sandin v. Conner*, 515 U.S. 472, 484-85 (1995) (a prisoner's liberty interests are not violated unless a condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); *Toney v. Owens*, 779 F.3d 330, 341-43 (5th Cir. 2015) (holding loss of prison job and other privileges resulting from inmate's classification as a sex offender did not implicate Due Process concerns); *Driggers v. Cruz*, 740 F.3d 333, 338-39 (5th Cir. 2014) (holding prison inmate's loss of privileges (including job assignments outside secure perimeter of a BOP facility) associated with inmate's refusal to participate in inmate financial responsibility program did not implicate the Due Process Clause). Plaintiff alleges no facts showing any defendant named in Plaintiff's pleadings violated any of Plaintiff's "clearly established" federal constitutional rights because they participated in the decision to remove Plaintiff from his prison janitorial job assignment following a violent confrontation between Plaintiff and another inmate.

## X. Retaliation Claims

Plaintiff alleges in his Amended Complaint in rather conclusory terms that Defendant Cortez retaliated against Plaintiff in February 2015, after Plaintiff filed a pair of grievances (one grievance complaining about a leaking toilet and another grievance complaining about unspecified conduct by Sergeant Selto-Rummuel), by moving Plaintiff out of 19-Building (ECF no. 10, at pp. 2-3).  Plaintiff also alleges that he worked as a janitor at the Connally Unit from January 2014 until October 2014, at which time Plaintiff appears to allege Defendant Cortez took away Plaintiff's job – either in retaliation for Plaintiff refusing to be housed with a black inmate (ECF no. 13, at pp. 2-3) or in retaliation for Plaintiff having been involved in a violent altercation with Plaintiff's cellmate (ECF no. 13, at p. 15).

Plaintiff has not alleged any specific facts or furnished this Court with any grievance forms showing that Plaintiff ever filed a grievance identifying any of the defendants named in Plaintiff's Amended Complaint as having been responsible for Plaintiff's allegedly retaliatory transfer from 19-Building.  On the contrary, the grievance dated August 5, 2015, accompanying Plaintiff's Amended Complaint (1) identified Sergeant Sotello as the person whom Plaintiff believed was responsible for Plaintiff's transfer from 19-Building after Plaintiff filed a grievance complaining about leaking toilets (ECF no. 13, at p. 13) and (2) alleged defendant Cortez refused to assign Plaintiff to a new job because Plaintiff had filed unidentified grievances "against the Unit" (ECF no. 13, at p. 13).  The fundamental problem with Plaintiff's claims of retaliation against Defendant Cortez is that, by his own admission, the allegedly retaliatory event about which Plaintiff complains the most, i.e., his loss of his work assignment as a janitor, took place in October 2014, while the events which Plaintiff alleges triggered that retaliation took place in 2015 *after* Plaintiff lost his job as a janitor.  Additionally, Plaintiff appears to allege in his grievances dated August 3, 2015 and September 3, 2015, he was involved in a violent altercation with his cellmate on or about April 8, 2015 (ECF no. 13, at pp. 13 & 15) which resulted in the refusal of Defendant Cortez to re-assign Plaintiff to a job within the Connally Unit.  Obviously, the events of April 8, 2015 described in Plaintiff's grievances could *not* have formed the basis for "retaliatory" actions which allegedly took place in October, 2014 when Plaintiff lost his janitorial position.  Nor does Plaintiff's violent altercation with his cell mate in April 2015 constitute constitutionally protected speech which might form the basis for a First Amendment retaliation claim.

In Plaintiff's September 3, 2015, Step 2 grievance, he offers a different retaliatory theory – that defendant Cortez took away Plaintiff's janitorial job in October 2014 in retaliation for Plaintiff refusing to share a cell with a black inmate (ECF no. 13, at pp. 15-16).  Plaintiff has submitted a Step 1 grievance dated October 14, 2014 to this Court in which Plaintiff stated very clearly that he would refuse to stay in a cell with a black offender (ECF no. 13, at pp. 17-18).  Plaintiff voiced the same complaint in a Step 2 grievance dated November 10, 2014. (ECF no. 13, at pp. 19-20)  In his November 10, 2014 Step 2 grievance, Plaintiff stated he wanted his old job as a janitor back and complained that he was then on Hoe Squad 24.  *Id.*

The law in this Circuit is clear that a prison official may not retaliate against an inmate for complaining to a supervisor about a guard's misconduct.  *See Bibbs .v Early*, 541 F.3d at 270 (a prison official may not retaliate against or harass an inmate for complaining to a supervisor about a guard's misconduct); *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.) (holding the same), *cert. denied*, 549 U.S. 1038 (2006); *Freeman v. Texas Department of Criminal Justice Hart v. Hairston*, 369 F.3d 854, 863-64 (5th Cir. 2003) (a prison inmate does retain, in a general sense, a right to criticize prison officials); *Woods v. Smith*, 60 F.3d 1161, 1165-66 (5th Cir. 1995) ("The law in this circuit is clearly established…that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."), *cert. denied*, 516 U.S. 1084 (1996); *Jackson v. Cain*, 864 F.2d at 1248 ("A prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest.").

To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident would not have occurred. *Tighe v. Wall*, 100 F.3d at 42. *Woods v. Smith*, 60 F.3d at 1166. Such motivation may be established by alleging a chronology of events from which retaliation may plausibly be inferred. *Tighe v. Wall*, 100 F.3d at 42. *Woods v. Smith*, 60 F.3d at 1166. Plaintiff has not alleged a clear chronology of events giving rise to an inference of retaliation. "To state a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d at 270; *Morris v. Powell*, 449 F.3d at 684; *Freeman v. Texas Department of Criminal Justice*, 369 F.3d at 863; *Hart v. Hairston*, 343 F.3d at 764; *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999); *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Insofar as Plaintiff complains that he was removed from his position as a janitor in October 2014 because he refused to share a cell with a black inmate, Plaintiff does not assert a violation of a constitutional right. The First Amendment does not protect an inmate who wishes to engage in racial discrimination. *See Sockwell v. Phelps*, 20 F.3d 187, 191 (5th Cir. 1994) (a generalized fear of violence is insufficient to justify racial segregation of prison inmates). Plaintiff possessed no constitutionally protected right to refuse to be housed with an inmate of an ethnic heritage different from his own. Likewise, insofar as Plaintiff alleges he has been denied new job assignments as a result of a violent confrontation between Plaintiff and his cell mate in April 2015, Plaintiff fails to allege a violation of a constitutional right. Nothing in the First Amendment protects a person against punishment for using violence against another individual.

*Freeman v. Texas Department of Criminal Justice*, 369 F.3d at 864 ("Prison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment.").   In fact, in a prison setting, proscriptions on all forms of violence may be rigidly maintained without violating any First Amendment right.   *Id.*   Moreover, Plaintiff's complaints that various supervisory TDCJ and Connally Unit officials failed to adequately address Plaintiff's grievances do not state a cause of action under § 1983.   A prisoner has no federally protected liberty interest in having prison grievances resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).   Thus, Plaintiff has failed to satisfy the first prong of retaliation analysis, i.e., he has failed to allege any facts showing that he engaged in constitutionally protected communicative behavior.   Therefore, Plaintiff's conclusory retaliation claims fail to state a cause of action, are insufficient to overcome the defense of qualified immunity, and are frivolous.

## XI. Eleventh Amendment Immunity

Insofar as Plaintiff seeks to recover damages against the defendants in their official capacities, Plaintiff's claims are barred by the Eleventh Amendment.   Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless the state has waived its sovereign immunity or Congress has clearly abrogated it.   *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996); *Moore v. Louisiana Bd. of Elementary and Secondary Education*, 743 F.3d 959, 963 (5th Cir. 2014); *Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).

Insofar as plaintiff seeks to recover a judgment for monetary damages against the state officials and employees named as defendants in this lawsuit in their official capacities, those claims are really asserted against the State of Texas.  *See Will v. Michigan Dept. of State* Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014) (holding the same), *cert. denied*, 134 S. Ct. 2734 (2014); *Union Pacific R. Co., v. Louisiana Public Service*, 662 F.3d 336, 340 n.3 (5th Cir. 2011) (holding the same).  Suits against a state official in his or her official capacity are really directed against the state, rather than the individual official.  *Hafer v. Melo*, 502 U.S. 21, 24 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985); *Morris v. Livingston*, 739 F.3d at 746 (holding suit against the Governor of Texas was "no different from a suit against" the State of Texas); *Esteves v. Brock*, 106 F.3d 674, 677 n.8 (5th Cir. 1997) (holding a Texas County prosecutor acts as a state official, rather than a local policymaker, when prosecuting a criminal offense), *cert. denied*, 522 U.S. 828 (1997); *Cantu v. Rocha*, 77 F.3d 795, 802 n.2 (5th Cir. 1996) (holding claims against state employees in their official capacities are claims against the State); *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996); *Sanders v. English*, 950 F.2d 1152, 1159 n.13 (5th Cir. 1992).  The Eleventh Amendment generally provides immunity to a state against suits in federal court by a citizen of the state against the state or a state agency or department.  *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 97-99 (1984); *Earles v. State Board of Certified Public Accountants*, 139 F.3d 1033, 1036 (5th Cir. 1998) ("The Eleventh Amendment thus negates federal jurisdiction over covered suits, including federal suits against a state brought by the citizens of that state."), *cert. denied*, 525 U.S. 982 (1998); *Sherwinski v. Peterson*, 98 F.3d 849, 851 (5th Cir. 1996); *Washington Legal Foundation*

*v. Texas Equal Access to Justice Foundation*, 94 F.3d 996, 1005 (5th Cir. 1996), *cert. denied*, 521 U.S. 1121 (1997); *Cantu v. Rocha*, 77 F.3d at 802 n.2; *Ganther v. Ingle*, 75 F.3d at 209 (holding the Eleventh Amendment prohibits a citizen from bringing suit against a state unless the state waives its immunity); *Saahir v. Estelle*, 47 F.3d 758, 760 (5th Cir. 1995).  The Eleventh Amendment is an explicit jurisdictional limitation on the judicial power of the federal courts. *Pennhurst*, 465 U.S. at 119-21, 104 S.Ct. at 918-19; *Sherwinski v. Peterson*, 98 F.3d at 851; *Saahir v. Estelle*, 47 F.3d at 760.  Plaintiff's claims for monetary damages against the individual defendants in their official capacities are barred by the Eleventh Amendment.

## XII. Claims for Injunctive Relief

For the reasons discussed at length above, Plaintiff's pleadings do not allege a valid constitutional claim.

Accordingly, it is hereby **ORDERED** that:

1.  Defendants' Peralta and Cortez's Amended Motion to Dismiss, filed April 21, 2016 (ECF no. 18), is **GRANTED; all of Plaintiff's claims against those defendants are DISMISSED WITHOUT PREJUDICE for failure to state a cause of action, pursuant to Rule 12(b)(6), FED.R.CIV.P.**

2.  All of Plaintiff's claims against Defendants Garcia, Ramirez, Ciron, Gaines, and Chappa are **DISMISSED WITHOUT PREJUDICE as frivolous, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).**

3.  **The Clerk of Court shall send a copy of this Memorandum Opinion and Order and the Final Judgment in this case to the Pro Se Staff Attorney, Attn.: Keeper of the "Three Strikes List," U.S. District Court for the Eastern District of Texas for the Tyler**

**Division, 211 West Ferguson, Tyler, Texas 75702, so this case may be recorded in the "Three-Strikes List."**

4.  The Clerk of this Court shall transmit a certified a copy of this Memorandum Opinion and Order and the Final Judgment in this cause to the TDCJ Office of General Counsel, P.O. Box 13084, Austin, Texas 78711 for determination of whether Plaintiff should lose accrued good conduct time credits pursuant to Texas Government Code § 498.0045.

**SIGNED** on May 10, 2016.


_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE